IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

THEON L. DANET,                    )
                                   )
              Plaintiff,           )
                                   )
                                   )
       v.                          )
                                   )  Civil Action No.: 3:26-cv-197
                                   )
PETE HEGSETH,                      )
Secretary of Defense,              )
                                   )
                                   )
              Defendant.           )
                                   )
_____   )

## COMPLAINT

Plaintiff Dr. Theon L. Danet, by counsel, brings this action against Defendant Pete Hegseth, Secretary of Defense, and alleges as follows:

### NATURE OF THE ACTION

1. This action arises from discrimination and hostile work environment within the Defense Commissary Agency ("DeCA"), a component of the United States Department of Defense.

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

3. The unlawful conduct described in this Complaint was carried out primarily by John Hall, Director of the Defense Commissary Agency, who served as the Responsible Management Official ("RMO") for the personnel actions described in this Complaint.

4. Plaintiff is a female, African-American Senior Executive Service ("SES") executive who served as Executive Director of Information Technology ("IT") and Acting Deputy Director/Chief Operating Officer ("COO") of DeCA (second in the chain-of-command at DeCA) at times relevant to this Complaint.

1

5.    Plaintiff became Acting Deputy Director/COO of DeCA effective March 31, 2023 after both the Director (William Moore)[1] and Deputy Director (Michael Dowling)[2] retired from federal service within one month of each other; the departure of DeCA's top two, senior leaders left a leadership vacuum, which was filled by Plaintiff who at that time was the senior-most SES employed at DeCA. Plaintiff was DeCA's senior leader until John Hall arrived as the Agency's new Director in June 2023.

6.    DeCA sales increased from $3.8 billion to $4.2 billion during Plaintiff's tenure as Acting Director/COO and she received universal praise and numerous performance accolades including a Department of Defense Meritorious Civil Service Medal in 2023.

7.    Despite Plaintiff's qualifications and demonstrated performance in the Deputy Director/COO role, RMO Hall, upon his arrival to DeCA in June 2023, undertook a series of actions designed to prevent Plaintiff from obtaining the permanent Deputy Director position.

8.    Hall's actions included cancelling a recruitment action after a "best qualified" list of candidates had been issued; recruiting private-sector candidates outside the competitive process; manipulating, obstructing, and interfering with the SES selection process by changing selection criteria and panel rankings/ratings; ordering panel re-evaluation and rankings based upon revised selection criteria; and attempting to install a preferred active duty, military candidate through an improper waiver[3] of federal hiring restrictions.

9.    These actions violated federal merit system principles and the regulatory framework governing SES hiring, including 5 C.F.R. § 317.501, which requires merit-based evaluation and fair competition in SES selections.

---

[1] William Moore retired effective March 31, 2023.
[2] Michael Dowling retired effective April 30, 2023.
[3] The waiver application referenced here was improper on its face because other "superior" applicants existed.

2

10. Hall's conduct was motivated by discrimination based on race and sex, created a hostile work environment, and ultimately forced Plaintiff to relinquish her acting leadership role and retire from federal service.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

12. Venue is proper in this district because the unlawful employment practices described herein occurred in the Eastern District of Virginia.

## PARTIES

13. Plaintiff Dr. Theon Danet is an African-American female and a former Senior Executive Service employee of the Defense Commissary Agency.

14. Plaintiff worked at DeCA headquarters located at Fort Gregg-Adams, Virginia.[4]

15. Defendant Pete Hegseth, Secretary of Defense, is the head of the Department of Defense and the proper defendant under Title VII.

## ADMINISTRATIVE EXHAUSTION

16. Plaintiff timely contacted DeCA's Equal Employment Opportunity office on January 19, 2024 to file an informal discrimination complaint as alleged herein.

17. When the parties could reach no resolution of Plaintiff's informal EEO complaint, Plaintiff filed a formal EEO complaint on March 6, 2024.

18. Plaintiff alleged discrimination based on race and sex and hostile work environment arising from her non-selection for the Deputy Director position and related actions by RMO John Hall that prevented Plaintiff's fair competition for the position.

19. The agency investigated the complaint and issued a Final Agency Decision (FAD) denying Plaintiff's claims.

---

[4] At the time of the events giving rise to the instant complaint, the name of the U.S. Army installation where DeCA headquarters is located was named Fort Gregg-Adams. Effective June 2025, Fort Gregg-Adams was renamed Fort Lee. This installation is located in Petersburg, Virginia.

20. Plaintiff received the agency's FAD by email, through counsel, on December 19, 2025.

## RELATED ADMINISTRATIVE PROCEEDINGS

21. Plaintiff has also filed a complaint with the U.S. Office of Special Counsel ("OSC") alleging that the Deputy Director hiring process violated federal merit system principles and constituted prohibited personnel practices.

22. These allegations arise under 5 U.S.C. § 2302 and include claims that agency officials manipulated the hiring process, rejected certified candidate lists without legitimate merit-based justification, and attempted to install a preselected candidate.

23. The OSC investigation concerning those allegations remains pending.

24. Administrative remedies for those claims have not yet been exhausted.

25. Plaintiff therefore does not presently assert claims arising under 5 U.S.C. § 2302 in this action.

26. Plaintiff expressly reserves the right to amend this Complaint to include those claims once the OSC administrative process has concluded.

## FACTUAL BACKGROUND

A.  Plaintiff's Qualifications and Leadership Role

27. Plaintiff is a highly accomplished federal executive with extensive leadership experience in the Department of Defense.

28. Plaintiff served as Executive Director of Information Technology (IT) for DeCA beginning in October 2020.

29. Plaintiff consistently received the highest performance ratings and multiple professional awards from 2020-2025.

30. Plaintiff was selected as one of Progressive Grocer's Top Senior-Level Executive Women in Grocery ("TWIG") and received this prestigious award for three consecutive years from 2022 through 2024.

4

31. On March 31, 2023, Plaintiff was appointed to serve as Acting Deputy Director/Chief Operating Officer of DeCA in addition to her regular duties as the Executive Director of IT.

32. Plaintiff successfully performed the duties of the Deputy Director role and the Executive Director of IT simultaneously for approximately ten months and received the highest possible performance ratings.

B.  Hall Cancels the Existing Hiring Action

33. On or about May 2023 DeCA initiated a competitive recruitment process for the permanent Deputy Director position under Job Opportunity Announcement (JOA) DECA-23-11953305-SES. This vacancy announcement closed on May 29, 2023, prior to RMO Hall's arrival at DeCA.

34. Plaintiff applied for the Deputy Director position and was placed on the certificate of eligible candidates and later ranked "superior" as one of the best qualified applicants.

35. The certified candidate list contained several best qualified candidates including the Plaintiff.

36. Shortly after assuming the position of Director of DeCA in June 2023, John Hall cancelled JOA DECA-23-11953305-SES.

37. Hall cancelled the hiring action despite the existence of a certified candidate list and without reviewing the candidates.

38. Hall informed senior DeCA officials that he intended to recruit a Deputy Director from the private grocery industry. Under oath, Mr. Hall stated, "I did so [cancelled the recruitment action] because I wanted to recruit someone with **commercial grocery experience**,[5] given my lack of experience in this area … I did not even look at the list." [emphasis added].

---

[5] The need to identify a candidate with "commercial grocery experience" was the only reason provided by Hall to cancel vacancy announcement DECA-23-11953305-SES.

39. Hall's admission that he cancelled the announcement without reviewing the candidate list demonstrates that his stated justification was not based on any evaluation of the candidates' qualifications.

40. Internal discussions among DeCA leadership between June 2023 and September 2023 reflect that Hall believed he might be able to hire a Deputy Director from the private sector without requiring the candidate to complete the Executive Core Qualification ("ECQ") narrative process typically required for Senior Service appointments.

C.   Efforts to Recruit Private-Sector Candidates

41. Following cancellation of the first hiring action, (JOA) DECA-23-11953305-SES, Hall and senior DeCA officials including James Flannery began exploring recruitment of private-sector executives to fill the Deputy Director position.

42. DeCA official James Flannery, acting with Hall's knowledge and support, began contacting private-sector executives in the grocery and consumer products industries.

43. Flannery compiled a list of specific private-sector executives whom he proposed to encourage to apply for the position outside the ordinary competitive recruitment process.

44. These outreach efforts occurred outside the formal federal hiring process.

45. Agency attorneys and human resources officials warned that such conduct raised serious legal and ethical concerns and could violate federal merit system principles and prohibited personnel practice statutes.

D.   Re-announcement and Panel Evaluation

46. After cancelling the initial hiring action, Hall directed that the Deputy Director position be re-announced in October 2023 under JOA DECA-23-12145567-SES. No substantive changes were made to the announcement. JOAs DECA-23-11953305-SES and DECA-23-12145567-SES were identical.

47. More than twenty candidates applied for the re-announced vacancy.

6

48. The Executive Evaluation Panel ("EEP") evaluated the applicants and identified only two best qualified, "Superior" applicants (Plaintiff and David Carey).

49. Both Plaintiff and David Carey were each previously identified on the original best qualified list that was cancelled by Hall in June 2023.

50. Despite two independent candidate evaluation processes identifying two superior candidates (Plaintiff and Carey), Hall rejected Plaintiff and Carey and refused to select either Plaintiff or Carey from the candidates evaluated by the EEP.

51. Rather than select from the candidates identified by the EEP as best qualified, RMO Hall interfered with the selection process by directing that the rating criteria be revised after the panel had already evaluated the candidate pool. Hall ordered the panel to re-evaluate candidates under revised criteria. Specifically, Hall interposed new "leadership" rating criteria to be emphasized by the panel and communicated his instructions through human resource staff members to direct the panel's evaluation to reach Hall's desired result, e.g., selection of another candidate.

52. Hall's interference led the panel to amend its best qualified, superior rankings from two individuals (Plaintiff and Carey) to five individuals (Plaintiff, Carey, Kurz, Edward Walters, and Jeffery Carter).

53. When asked for an explanation for his actions after Plaintiff had filed her informal discrimination complaint, Hall informed the EEO counselor that he rejected the panel's initial list of superior candidates because he did not believe that either Plaintiff or Carey possessed the qualities he was seeking and he "did not want to hire Aggrieved [Plaintiff] or Mr. Carey for the position."

54. Hall's admission to the EEO counselor that he did not want to hire Plaintiff or Carey[6] is direct evidence of his intent to ignore merit principles and federal sector legal requirements for

---

[6] Mr. Carey is an African-American, male.

the fair and impartial evaluation of SES applicants. By changing evaluation criteria after evaluations were made, Hall directly influenced panel ratings.

    E.   Attempted Selection of Colonel Joseph Kurz

55. Hall subsequently attempted to select Colonel Joseph Kurz,[7] a recently onboarded Caucasian (white), male military officer serving as Hall's Military Assistant. On or about December 15, 2023, Hall signed a "**SES SELECTION FORM**" identified in its label for "**Selecting Official Use Only**," wherein Hall identified Joseph Kurz as the "selectee" and identified himself as the "Selecting Official."

56. This "**SES SELECTION FORM**" also identified four non-selected, best qualified individuals including Plaintiff, David Carey, Jeffery Carter and Edward Walters. Thus, there were five "best qualified candidates" identified on the best qualified list of applicants.

57. Because Kurz was an active-duty military officer approaching retirement, federal law prohibited his immediate appointment to a civilian position unless the Department of Defense granted a waiver of the 180-day post retirement employment restriction.

58. Such waivers are permitted only when an agency determines that no qualified candidates are available through normal competitive hiring procedures.

59. Hall nevertheless submitted a waiver request asserting that Kurz was superior to other candidates referred for the position and that no other qualified candidates existed.

60. That representation was incorrect and misleading because Plaintiff had already demonstrated her ability to perform the duties of the position while serving as Acting Deputy Director and had been identified by the EEP as one of the best qualified candidates for the position. Further, the EEP identified a total of five best qualified applicants.

---

[7] COL Joseph Kurz was a close friend of Hall with whom Hall had previously served in the U.S. Army and whom Hall personally recruited to join DeCA.

61. Hall later stated that Assistant Secretary of Defense Grier Martin was informed of the proposed selection and verbally approved the selection of Kurz prior to the submission of a 180-day waiver package by Hall to the Pentagon for the benefit of selectee Kurz.

62. The Department of Defense later declined to support Hall's waiver request and the request was denied.

63. Following the waiver denial, Hall withdrew the selection of Kurz and restarted the hiring process eschewing the selection of Plaintiff or any of the other four named "best qualified candidates" evaluated by the rating panel for JOA DECA-23-12145567-SES.

F.   Hostile Work Environment

64. One of the most significant initiatives under Plaintiff's leadership as Executive Director of IT and Acting Deputy Director/COO was the Enterprise Business Systems 2.0 ("EBS 2.0") modernization program, a major agency-wide effort to transition DeCA from its legacy Enterprise Business Systems platform to a modern enterprise technology environment. The EBS 2.0 program represented the largest information technology modernization effort within the agency and was central to DeCA's long-term operational transformation.

65. In June 2023, Plaintiff and her team briefed Hall on the strategic plan for implementing the EBS 2.0 modernization initiative. As the agency's Chief Information Officer, Plaintiff had developed the strategy for the program and was responsible for overseeing its implementation.

66. Shortly after this briefing, and without consultation with Plaintiff, Hall reassigned oversight of the EBS 2.0 initiative to Colonel Joseph Kurz, a recently onboarded military officer serving as Hall's Military Assistant. This reassignment removed one of the most significant technology modernization initiatives from the Information Technology Directorate and from Plaintiff's span of control.

9

67. Following this reassignment, Kurz began presenting himself internally as the leader of the EBS 2.0 modernization effort, and agency personnel understood that authority over the initiative had shifted from Plaintiff to Kurz.

68. Multiple senior officials within DeCA observed the shift in authority over the EBS 2.0 program and the corresponding marginalization of Plaintiff's leadership role. Senior members of the agency's leadership team later confirmed that Plaintiff had originally led the development of the EBS 2.0 modernization strategy before Hall reassigned authority over the initiative to Kurz.

69. The reassignment of the EBS 2.0 program and Plaintiff's exclusion from related leadership discussions significantly diminished Plaintiff's authority and influence within the agency and contributed to the hostile work environment she experienced during her tenure as Acting Deputy Director.

G.  Third Announcement and Subsequent Events

70. After the waiver request was rejected, the Deputy Director position was announced for a third time under JOA DECA-24-12376969-SES, which opened on April 9, 2024 and closed on May 7, 2024.

71. Hall provided no legitimate merit-based reason for the decision to cancel the second JOA, which contained Plaintiff's name and three other "best qualified" candidates on a list of best qualified applicants produced after months of work screening and evaluating more than twenty candidates.

72. The Department of Defense exercised greater oversight over the candidate pool and interview process for this third job announcement, JOA DECA-24-12376969-SES.

73. The Pentagon ultimately approved Karen Davis, an African-American female candidate, as DeCA's next Deputy Director.

74. Davis was employed with DeCA from October 2024 through on or about November 2025, when she suddenly left her position and filed her own claims alleging hostile work

10

environment and discrimination against Hall. Davis' discrimination claims filed against Hall remain pending in administrative proceedings at the time of the filing of this Complaint.

H.  Plaintiff's Retirement

75. After being passed over twice for the Deputy Director position and stripped of leadership authority within the agency, Plaintiff relinquished her Acting Deputy Director role in January 2025 and returned to her prior role as Executive Director of IT.

76. Plaintiff subsequently retired from federal service effective May 30, 2025 without ever being offered the permanent role of Deputy Director at DeCA.

## COUNT I: RACE DISCRIMINATION (TITLE VII)

77. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

78. Plaintiff is a member of a protected class as an African-American.

79. Plaintiff was qualified for the Deputy Director position.

80. John Hall denied Plaintiff the promotion despite her qualifications.

81. Hall manipulated the hiring process and attempted to install other candidates.

82. Hall's actions violated Title VII.

## COUNT II: SEX DISCRIMINATION (TITLE VII)

83. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

84. Plaintiff is a female employee within a protected class.

85. Plaintiff was qualified for the Deputy Director position.

86. Hall provided improper and unlawful hiring preferences to Kurz, a male.

87. Defendant's actions violated Title VII.

## COUNT III: HOSTILE WORK ENVIRONMENT

88. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

89. Hall's actions created a hostile and abusive work environment.

90. Plaintiff was excluded from leadership meetings and stripped of responsibilities.

91. Defendant is liable under Title VII for its abusive and hostile acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.  Back pay and/or benefits payable under the Back Pay Act, 5 U.S.C. § 5596, including interest calculated as provided by law.

B.  Compensatory damages in the amount of $300,000.00 for emotional distress, mental anguish, humiliation, loss of enjoyment of life, reputational injury, and other damages sustained.

C.  Reinstatement of Plaintiff to employment with full seniority, benefits, and back pay, or in the alternative, front pay if reinstatement is not feasible.

D.  Attorneys' fees and litigation costs incurred.

E.  Any further relief as the Court may deem just and proper.

**A TRIAL BY JURY IS DEMANDED**.

Respectfully submitted:

> **/s/ Darrin W. Gibbons**
> Darrin W. Gibbons, Esq.
> Virginia bar number 83915
> Counsel for Plaintiff
> Gibbons Law Firm PLC
> 3900 Westerre Parkway, Suite 300
> Richmond, VA 23233
> Phone: (804) 727-0036
> Fax: (804) 884-3896
> Email:  dgibbons@dgibbonslaw.com

12